Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

**Dated: August 9th, 2019**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT PARKERSBURG**

| IN RE: | CASE NO. 6:16-bk-60085 |
|---|---|
| TIMOTHY HUGH DIALS, | CHAPTER 7 |
| Debtor. | JUDGE FRANK W. VOLK |

**MEMORANDUM OPINION AND ORDER**

Pending is HSBC Bank USA, N.A.'s Motion for Entry of Order ("HSBC Motion") [dckt. 279]. The Court heard the Motion on Wednesday, June 19, 2019. Present was counsel for HSBC Bank USA, N.A. ("HSBC"). Neither the Debtor Timothy Hugh Dials nor counsel for the United States Trustee appeared, although the latter was directed to attend [*see* dckts. 301 & 305]. Following the hearing, Mr. Dials filed a Motion for Extension/Rescheduled Hearing ("Motion for Extension") [dckt. 309]. HSBC filed its Response on July 15, 2019 [dckt. 310].

The instant case has been pending since June 13, 2016. It has languished, in part, due to the dilatory and bad-faith tactics of Mr. Dials and Santana Cline.[1] This case is but another chapter in the extensive, years-long abusive litigation prosecuted or defended by Mr. Dials and Ms. Cline in various state and federal courts. While that troubling history is not here recounted, two prior memoranda opinions are illustrative, namely, (1) the undersigned's Memorandum Opinion and Order Granting HSBC Bank USA, N.A.'s Amended Motion to Lift Automatic Stay

---

[1] Ms. Cline is variously referred to as Mr. Dials' daughter or step-daughter. For example, in testimony given on April 6, 2017, Mr. Dials refers to Ms. Cline as his "stepdaughter." [Dckt. 239, p. 58]. However, in her electronic mailings to the Court, she refers to herself as his daughter.

("Stay Lift Opinion") [dckt. 249], and (2) the Memorandum Opinion and Order entered by the Honorable Joseph R. Goodwin during Mr. Dials' appeal to the District Court ("District Court Opinion") [dckt. 276].

The Stay Lift Opinion granted *in rem* relief to HSBC on residential real property purchased by Ms. Cline in 2006 and subsequently transferred to Mr. Dials. At the time the Stay Lift Opinion was entered, no payments had been made on the obligation in over a decade. The Court did not grant *in rem* relief lightly; it is a remedy available to a creditor only "if the bankruptcy filing was part of a scheme to hinder or defraud creditors and which involves either multiple bankruptcy filings or transfer of the property in question without . . . approval . . . or . . . consent." [dckt. 249, p. 15].

The Stay Lift Opinion recited the extensive litigation history involving Ms. Cline, Mr. Dials, and the subject property. Those matters each involved some or all of the frivolous assertions by the two individuals: (1) Ms. Cline's note had been cancelled, (2) Ms. Cline's signature and the assignment of the note were forged, (3) the mortgage assignment was defective and invalid; (4) a fraudulent foreclosure occurred, (5) there was a conspiracy by the lender(s), (6) there were violations of the Fair Debt Collection Practices Act, (7) the lender(s) harassed Mr. Dials, and (8) HSBC lacked standing.[2] The Court numbered "no less than 12 (twelve) filings undertaken [in the past] by Ms. Cline to thwart sheriff's sales and attempts by HSBC to rightfully recover the subject property." [dckt. 249, p. 21]. Further, the transfer of the property by Ms. Cline

---

[2] Mr. Dials attempted to support this last allegation by providing the Court with several "citations" to cases in which HSBC had been removed as the Trustee to Ace Securities. Only one citation appeared to represent a real case, while the others were simply irrelevant jumbles of names, numbers, and letters. [dckt. 249, pp. 10, 18].

2

to Mr. Dials occurred on the "same day that *in rem* relief was granted from the bench" by the United States Bankruptcy Court for the District of Nevada. [dckt. 249, p. 21].

The Court also acknowledged Mr. Dials' lack of trustworthiness, nothing that "Ms. Cline and Mr. Dials have accused at least two attorneys of forgery without any evidentiary support whatsoever, absent some purported [laboratory] findings . . . . Mr. Dials has claimed numerous times to be in possession of the 'cancelled note,' but has yet to produce it . . . ."[3] [dckt. 249, p. 22]. In the meantime, HSBC had produced in court the legitimate, wet-ink note that had not been cancelled. The Court additionally noted that Mr. Dials had "difficulty keeping track of his very own shotgun allegations. For example, he claimed during the May evidentiary hearing that HSBC has no interest in the subject property, while later admitting that Ms. Cline had a mortgage and that HSBC had a foreclosure judgment related to the subject property."[4] [dckt. 249, p. 22].

In previously granting *in rem* relief, the Court also analyzed the application of judicial estoppel. It found Mr. Dials' matter to be

> the paradigmatic case for a judicial estoppel finding, namely, one where parties engage in abusive and endless litigation in the hopes of buying time, clogging a busy judicial system, and, in the process, compromising our state and federal tribunals' abilities to justly and rapidly adjudicate real controversies between parties with viable claims and defenses.

[dckt. 249, p. 22].

---

[3] The Court notes that these claims, at times, were made while Mr. Dials was testifying under oath. [dckt. 249, pp. 10-11].

[4] The pattern continues in the instant Motion for Extension. Mr. Dials again claims "the mortgage in question, or what's left of it since it was cancelled . . . is now controlled by PHH Mortgage Servicing for FANNIE MAE. . . . HSBC at this point absolutely has zero rights to be in this Court." [dckt. 309, p. 2]. He attached to the Motion for Extension, however, an account statement which shows a payment due for November 1, 2006, with a principal balance of $433,200 that refutes the arguments he made only pages before [dckt. 309, p. 28].

3

Mr. Dials appealed the Stay Lift Opinion to the United States District Court for the Southern District of West Virginia on October 4, 2017. Just a few months later, Judge Goodwin entered the District Court Opinion, in which he dismissed the appeal. Judge Goodwin found it "apparent" that "the appellant's underlying cases and his appeals . . . were filed frivolously and maliciously" and that all the litigation initiated prior to the instant bankruptcy case was "solely to enable Ms. Cline to remain in the home, even though she had not made a payment since 2006." [dckt. 276, pp. 1-2].

Importantly, Judge Goodwin noted the undersigned's "concern[] with Mr. Dials' bad faith in the litigation" and opined himself that, in the underlying cases, Mr. Dials had "made clear misrepresentations of material facts to the court on numerous occasions and based his arguments on evidence that he failed to produce." [dckt. 276, p. 3]. The District Court Opinion concluded with Judge Goodwin's statement that "Ms. Cline and Mr. Dials are engaging in frivolous, malicious, and time-consuming abuse of the court system. . . ." [dckt. 276, p. 4]. That observation included a recommendation for "federal investigations if Mr. Dials and Ms. Cline persist in this longstanding and abusive conduct." [dckt. 276, p. 4]. Persist they did. Mr. Dials promptly appealed the District Court Opinion to the United States Court of Appeals for the Fourth Circuit, where Judge Goodwin's ruling was affirmed. HSBC then filed the HSBC Motion, to which Mr. Dials objected.

In the months and days leading up to the hearing on the HSBC Motion, Mr. Dials continued his dilatory efforts to fend off the matter. A summary of those familiar efforts follows.

At the outset, it is noted that, as a general rule, the Court does not receive filings via either electronic mail or facsimile. The CM/ECF system, or conventional or private mail, are the means to file documents with the Court. Mr. Dials has access to both the CM/ECF system and

the PACER system, which is the electronic public access service that allows users to obtain case and docket information. Given his PACER account, he is quite familiar with electronic means for filing and accessing documents. Nevertheless, both Mr. Dials and Ms. Cline have attempted, in recent times, to file documents via facsimile or electronic mail, contrary to Local Rule 5005-1, which provides that "pleadings or other papers are not permitted to be filed via a facsimile machine, unless authorized by the Court or the Clerk." No such permission was given in this instance, and Mr. Dials, at least, has previously been advised that he cannot file court documents via facsimile or e-mail.

The HSBC Motion was filed on March 7, 2019. It was initially set for hearing on April 10, 2019. On April 7, 2019, at 9:53 p.m., Mr. Dials sent an electronic communication to a Bankruptcy Clerk's Office staff member stating that his wife had been hospitalized with a serious illness and he would be unable to attend the April 10, 2019, hearing. Subsequently, Mr. Dials submitted at 4:43 p.m. on April 8, 2019, a Motion to Strike and/or Request for Postponement of the hearing [dckt. 291]. The Court acquiesced and continued the hearing to May 1, 2019.

Again, on the eve of the May 1, 2019, HSBC Motion hearing, Mr. Dials contacted the Court via e-mail to assert that he would be unable to attend the May 1, 2019 hearing. He reported that his wife continued to be hospitalized. Mr. Dials was referred to the Local Rules pertaining to Motions to Continue and Appear by Phone, as his request did not conform thereto. In view of a pressing matter in a complex Chapter 11 case, however, the HSBC Motion hearing was ultimately rescheduled to May 8, 2019. Notice of that change was entered on April 30, 2019 [dckt. 298].

Consistent with his peremptory track record, Mr. Dials, just before the May 8, 2019, hearing, filed a Motion to Continue the hearing on May 6, 2019 [dckt. 300]. He asserted he could

5

not appear due to another medical emergency suffered by his wife, but also stated that he "[did] not anticipate any further extension." The Court granted Mr. Dials' Motion to Continue and reset the hearing for June 5, 2019 [dckt. 301], and then June 19, 2019 [via Notice at dckt. 302]. The Order stated that "any additional continuance requests by Mr. Dials must be accompanied by his sworn declaration or affidavit reciting in detail the circumstances which necessitate the continuance, with appropriate supporting documentation attached."

At 8:05 p.m. on Monday, June 17, 2019, two days prior to the reset hearing, the Court received an e-mail communication from Ms. Cline. She asserted her father had appointed her his attorney in fact and medical representative. Unsurprisingly, she provided no documentation to substantiate the assertion.[5] Ms. Cline reported that Mr. Dials would not appear for the June 19, 2019, hearing. The e-mail notes that Mr. Dials was then receiving treatment for "DVT" and had been "admitted to care last Thursday, [June] 13th[, 2019]." Again, no documentation was attached to the e-mail, but Ms. Cline promised she could provide "all necessary medical information" and would forward an "excuse note" from Mr. Dials' doctor. No formal request for continuance was filed and none of the required documentation was provided. Accordingly, the Court denied the continuance request on June 18, 2019 [dckt. 305].

On June 19, 2019, at 12:30 p.m., a half-hour before the hearing scheduled on the HSBC Motion, Ms. Cline again e-mailed the Bankruptcy Clerk's Office inquiring as to whether the Court had received supporting medical documentation from Mr. Dials' physicians. The Clerk's Office had received no such communication.[6] Following that e-mail, Ms. Cline sent another at

---

[5] Ms. Cline may not, of course, represent her father *pro se*. Given his putative illness, however, the Court exhibited some flexibility.

[6] Note that, as of 4:50 p.m. on Thursday, August 8, 2019, the Clerk's Office has yet to receive any kind of communication or supporting documentation from any healthcare provider relating to Mr. Dials' alleged condition(s).

6

12:43 p.m., which contained a screenshot of medical records alleged to be those of Mr. Dials. The Court noted the absence of any patient name within the records; this made it impossible to determine if the records were bona fide. Ms. Cline also explained that she contacted the hospital and understood it had "forwarded a letter from MCIC and the attached medical record to 304-347-3000." That phone number does not correspond to the Bankruptcy Clerk's office; it is, instead, the main number for the District Clerk's Office.

The Bankruptcy Clerk's Office responded to Ms. Dials' two June 19, 2019, e-mails explaining that the continuance had been denied and, as a courtesy, attached a copy of the order.

The hearing on the HSBC Motion went forward. The Court provisionally granted the HSBC Motion but held it in abeyance for twenty-one (21) days to allow Mr. Dials to respond with a signed and sworn affidavit explaining the circumstances surrounding his absence, along with medical attachments to substantiate his condition and provide information as to when the condition should be relieved.

Ms. Cline responded at 1:43 p.m. on June 19, 2019, with an e-mail containing yet another screen shot of medical records purporting to substantiate her mother's (Mr. Dials' wife) medical conditions and extended hospital stay. Importantly, no further documentation was provided to substantiate Mr. Dials' medical condition. Also, no signed and sworn affidavit was received from Mr. Dials.

Ms. Cline next sent an e-mail to Bankruptcy Clerk's Office staff which included electronic correspondence with Phil Graves. This document was sent at 6:46 p.m. on Wednesday, June 19, 2019. The e-mail appears to request legal services from Mr. Graves (who has a Google Mail, or "gmail" address), apparently relating to the Bankruptcy Clerk's Office handing of her transmitted materials. This was followed the next day by a communication from Ms. Cline sent to

the Administrative Office of the United States Courts Internal Control and Audit contact requesting information about "the jurisdiction [] for the Administrative Oversight and Accountability department . . ." and whether it "cover[s] issues that involve the ethics or improper handling of a case by a Clerk of Courts [sic]." The e-mail contained baseless and unsubstantiated allegations against the Bankruptcy Clerk's Office relating to Ms. Cline's request for a continuance due to Mr. Dials' medical condition.

Importantly, after an extensive review of the Bankruptcy Clerk's Office phone lines and voicemail boxes, the Bankruptcy Clerk's Office learned that no voicemail was left during the period in question by Ms. Cline, Mr. Dials' purported physician, or from any of the medical providers alleged to have been treating Mr. Dials.

On July 10, 2019, Mr. Dials filed the instant Motion for Extension. Mr. Dials is now requesting that the June 19, 2019, hearing be rescheduled or, in the alternative, be stricken. Mr. Dials contends the Court was aware of medical emergencies involving both him and his wife dating back to April 2019. He supports this claim by attaching e-mail communications with various members of the Bankruptcy Clerk's Office regarding his wife's condition and his need for continuances. Most of those emails have been discussed previously herein. Mr. Dials also submitted as attachments purported photos of hospital rooms and medical documentation dated April 7, 2019, to June 19, 2019. He asserts that this "documentation" is relevant and controlling inasmuch as it is "signed by two doctors, all verifiable by the hospital." [dckt. 309, p.1]. The Court acknowledges that these are indeed documents which include the names of individuals purporting to be physicians. Further, Mr. Dials' wife's name appears in two photographs, and some of the medical records list her name. Nowhere in these papers, however, does the patient name "Timothy Dials" appear. It thus is apparent that the "documentation" provided via e-mail to

the Clerk's Office and attached to the Motion for Extension with regards to Mr. Dials' condition is, in actuality, random medical records having no bearing whatsoever on the matters previously adjudicated by the Court.

Additionally, Mr. Dials attached to his Motion for Extension a "Declaration in Support of Debtor Timothy Dials" ("Declaration") in a clever but incomplete attempt to comply with the Court's requirement that he submit a *sworn* declaration or affidavit detailing the circumstances necessitating a continuance. The Declaration is in the proper form save for one critical omission; it is unsworn before a notary. Mr. Dials simply electronically signed the document. The Declaration thus lacks the oath required under the Court's directive or 28 U.S.C. § 1746. It is a nullity [dckt. 301].

HSBC filed its Response to Mr. Dials' Motion for Extension [dckt. 310]. HSBC contends that Mr. Dials' filing fails to comply with the requirements of the Court's Order entered May 7, 2019, [dckt. 301] inasmuch as Mr. Dials' declaration was unsworn. HSBC further asserts that Mr. Dials' supporting documentation pertained mostly to his wife's condition. No documentation attached to the Motion for Extension supports the existence of a medical condition for Mr. Dials and thus lacks support for the requested continuance of the June 19, 2019 hearing.[7] Finally, HSBC, in its Response, correctly summarizes the situation, explaining that "[t]he Court has granted *in rem* stay relief, Debtor lost all of his appeals therefrom, and there is no non-frivolous argument left to be made to avoid entry of the proposed [stay relief] Order." [dckt. 310, p. 2].

Following these filings, and instead of submitting a formal Reply to HSBC's Response, Mr. Dials has continued to send improper and harassing e-mail communications to the

---

[7] The Court reiterates that the medical documents submitted by Mr. Dials to substantiate his medical condition contain *no patient name*. Therefore, his attempt at substantiation fails.

Bankruptcy Clerk's Office and to the Court's law clerks. On July 16, 2019, at 12:45 a.m., Mr. Dials e-mailed the Bankruptcy Clerk's Office claiming a "Notarized Penalty of Perjury page (Date July 6th)" and a "Dr. Jacko letter" were missing from the docket. He claimed he "ha[s] had problems in the past with dockets missing or incorrect, so while [he wasn't] surprised, [he] find[s] it deeply disturbing . . . ." He ended his communication by asking the Clerk's Office employee, "[w]hat do you propose to do?"

Mr. Dials immediately sent a second communication on July 16, 2019, at 12:51 p.m., in which he attached a purported "USPS statement" which supposedly supports his claims that the above-listed documents were sent to the Bankruptcy Clerk's Office and then deliberately left off the official docket. This USPS statement is a mostly illegible screenshot in which the only readable text, without great magnification, is the words "Sent Message." It bears no logo or any identifying insignia and shows only a message from "themerrychristmasmonkey@gmail.com" to the "Robert C. Byrd U.S. Courthouse Clerk's Office." The words "Priority File Envelope – Priority Mail" are visible below the Clerk's Office address with an accepted time of July 8, 2019, at 12:27 a.m. The screenshot lists eight content files. None of the filenames are legible, even when magnified. This is an entirely insufficient basis upon which to accuse Court personnel of any impropriety.

On Sunday, July 21, 2019, at 4:31 a.m., Mr. Dials continued his misconduct by transmitting another e-mail communication to a Bankruptcy Clerk's Office employee in which he states, "Is this your new thing? Lie to the court about receiving medical documents and when they are mailed in[,] not file them?" This missive was followed, on Wednesday, July 24, 2019, at 6:16 a.m., by an email from Mr. Dials to the Court's law clerks stating, "[i]s this acceptable behavior for your court? Failing to file documents and avoiding messages?"

In order to assemble a complete record, the Court will place both Ms. Cline's and Mr. Dials' e-mail communications on the docket. Any communication containing medical references or information, along with any personal identifiers, shall be appropriately shielded in accordance with governing law. Going forward, Mr. Dials and Ms. Cline are **NOTICED** that serial e-mails do not properly place a dispute before the Court for adjudication. The Bankruptcy Clerk's Office has been directed to ignore any further e-mails from Ms. Cline or Mr. Dials. In the event either wish to communicate with the Court, they will do so by public or private mail in the form of a document suitable for filing. Any noncompliant communication from them will neither be read nor acted upon. In accordance with the foregoing, it is **ORDERED** that the HSBC Motion be, and is hereby, **GRANTED**.

**IT IS FURTHER ORDERED** that Mr. Dials' Motion for Extension be, and hereby is, **DENIED**.

**IT IS FURTHER ORDERED** that the e-mails from Ms. Cline and Mr. Dials shall be placed on the docket, with any personal identifiers or medical information appropriately shielded in accordance with governing law**.**